## TUNICA COUNTY v. THADDEUS N. RHODES.

1. SCHOOL FUNDS. *Warrants. School directors. Orders. Code* 1871, § 2024.

   Under Code 1871, § 2024, providing that the county treasurer shall not pay warrants drawn on school moneys unless they have been issued by order of the board of school directors, it is necessary to sustain a warrant issued thereunder, alleged to have been drawn pursuant to a lost order of the board, to prove not only that an order for the warrant had existed, but its contents as well.

2. SAME. *Specification of use. Code* 1871, § 2025. *Mandamus.*

   Under Code 1871, § 2025, providing that all orders upon the county treasurer for the payment of school moneys shall specify not only the fund upon which they were drawn, but the specific use to which the money was to be applied, school warrants issued thereunder which fail to specify the specific use to which the money was to be applied are void, and mandamus will not lie to enforce the levy of a tax for their payment.

FROM the circuit court of Tunica county.

HON. SAMUEL C. COOK, Judge.

Rhodes, the appellee, was plaintiff, and Tunica county, the appellant, defendant in the court below. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

The suit was begun by a petition filed in the circuit court of Tunica county by appellee against appellant for a mandamus to compel appellant to levy a tax on the taxable property of said county for the payment of a number of warrants owned by him, issued to the county treasurer of said county, signed by the president and countersigned by the secretary of the board of school directors, at divers times between June 15, 1872, and April 18, 1873. The following is a copy of one of them, the others conforming to same form: "No. 181. The State of Mississippi. The board of school directors of Tunica county. Austin, Miss., June 15th, 1872. To the county treasurer: Pay

to G. W. Merriman, or order, $50.00 allowed by the above board from the school fund, in subdistrict number eight (8), and for so doing this shall be your warrant. ($50.00.) [Counter-signed] C. W. Dunaway, secretary, by J. E. Deering, D. S. [Signed] Edward Carter, president. [Indorsed on back] G. W. Merriman." The case was tried before the judge, a jury being waived.

On the question as to whether the warrants had been issued by the board of school directors, the appellee showed the following facts: (1) The existence of the board of school directors. (2) That those who signed the warrants held the official positions recited in the warrants; that their signatures were genuine; that the board of school directors had a warrant book, filled originally with printed school warrants, containing blanks for dates, amounts, funds, numbers of subdistricts, and for the signatures of the president and secretary; that this book also contained stubs to correspond with the warrants; that a great number of school warrants were issued from the warrant book, the first being dated April 8, 1871, and the last June 14, 1873; that all the stubs in said warrant book, corresponding to the warrants issued therefrom, were filled out; that the warrants in this suit were issued from this book, and tallied with the stubs, having the same dates, payees, and amounts, and being upon the same fund, and that the payees in said warrants receipted for the same on said stubs; that the county treasurer had made settlements with the board of school directors, showing that he had paid a great number of the warrants issued from said warrant book, some of them having been issued during the time covered by the warrants sued on, and that the actions and settlements of the treasurer were approved by the board of school directors; that the payees in the warrants were teachers at the time they were issued; that the board of school directors kept a record of their allowances and proceedings, which was lost, and diligent search had been made for it by the proper parties.

*F. A. Montgomery,* and *J. N. Flowers,* assistant attorney-general, for appellant.

*Perkins & Winston,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

Code 1871, § 2025, provides for four distinct funds—a schoolhouse fund, a teachers' fund, a school-land fund, and a state school fund. There was no such fund known to the law as a school fund. The schoolhouse fund was to be used to pay for schoolhouse purposes and contingent expenses. The teachers' fund was to be used to pay the salaries of teachers. The same section provides "that all orders upon the treasurer for the payment of school moneys should specify not only the fund upon which drawn, but the specific use to which the money was to be applied." None of these warrants specified the specific use to which the money was to be applied. It was not enough to name the fund out of which the money was to be paid, but it was also essential that the order and the warrant should both specify the use to which the money was to be applied. There is nothing in the warrant to show whether the money was used for the payment of teachers' salaries, for the *per diem* of the director's, for the superintendent's salary, or for the building of a house. A house could be built by money from the teachers' fund. The purpose of the law was to require, as a legal voucher, a warrant on its face evidencing the specific use to which the money was to be applied, and without this the warrant was a nullity.

Counsel for appellee insists that the words "specific use" mean "subdistrict," and he cites *Jarvis* v. *Warren County,* 49 Miss., 603. But he misapprehends that case. The purpose of the opinion there was to show that each subdistrict must bear its own burden, and incidentally, as flowing from this, that a warrant could not show the specific use without showing the subdistrict for whose benefit the money was to be used. But this

is far from showing that it was enough for the warrant to show merely that it was drawn on a certain fund of one of the sub-districts. It must have gone beyond that and shown the specific use to which the money was to be applied. The treasurer was to act as a check on the board of school directors, and the statute required him to know whether the claim the warrant was to pay constituted a legitimate charge against the fund on which it was drawn; and the warrant itself was required by the law to be thus drawn, specifying the specific use to which the money was to be applied, that it might, on its face, furnish the treasurer with the facts showing that it was a legitimate warrant. As well said by counsel for appellant: "The treasurer could do this same thing in passing upon warrants issued by the chancery clerk upon allowances by the chancery and circuit courts and the board of supervisors. For much stronger reasons he was to deal in this way with warrants of this subordinate board."

There is a second objection to the affirmance of this judgment. Code 1871, § 2024, expressly recites that the treasurer shall not pay these warrants unless they have been "issued by order of the board" of school directors. These orders are not produced in this case. It seems they cannot be. It was therefore necessary to prove their contents, in order that it might be seen whether the orders themselves were valid judgments, conforming strictly to the requirements of the law. It was not enough for appellee to show that there had been orders made— that is to say, that orders had existed—but the precise thing essential for appellee to show in this connection was the contents of the orders. Without protracting this opinion by extended comment on the evidence, it is enough to say that the evidence on this point falls far short of such showing as the nature of the case requires.

*It follows that the judgment is reversed and the suit dismissed.*